UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK    CV 12    Index No:    5591

------------------------------------------------------------------X

**COMPLAINT**

LANDELL D. ELLIS and ALESSANDRA L. CHARLES,

Plaintiffs,

-against-

THE CITY OF NEW YORK, SERGEANT MARTINEZ,
DETECTIVE BONAH, POLICE OFFICER RODRIGUEZ,
DETECTIVE LAGANO, DETECTIVE TRAN,
LIEUTENANT KAPUR, DETECTIVE CARRERA,
DETECTIVE CIPRIAN, UNDER COVER OFFICER #
136, UNDER COVER OFFICER # 163, GHOSTING
UNDERCOVER "JOHN DOE",

Defendants.

**JURY TRIAL
DEMANDED**

------------------------------------------------------------------X

Plaintiffs, Landell D. Ellis and Alessandra L. Charles, by their Attorneys, OFODILE &

ASSOCIATES, P.C., complaining of the Defendants, The City of New York, Sergeant Martinez,

Detective Bonah, Police Officer Rodriguez, Detective Lagano, Detective Tran, Lieutenant Kapur,

Detective Carrera, Detective Ciprian, Under Cover Officer #136, Under Cover Officer # 163 and

Ghosting Undercover "John Doe", allege as follows:

**NATURE OF ACTION**

1.    This is an action for false arrest, false imprisonment, and malicious prosecution,

against the City of New York and its agents at the New York Police Department that caused

Plaintiffs their loss of freedom, significant financial loss, as well as emotional and mental

distress.

2.    This is also an action to redress the pain and suffering and psychological injuries

1

sustained by Plaintiffs as a result of the intentional malicious, careless, and negligent acts of the City of New York through some of its Police Officers.

## JURISDICTION

3.   The jurisdiction of this Court is invoked under 28 U.S.C. § 1343(3), this being an action authorized by law to redress the deprivation under color of state law, statute, ordinance, regulation, custom and usage of a right, privilege, or immunity secured for the Plaintiff by the Constitution and laws of the United States.  Jurisdiction of this court exists pursuant to 42 USC §§ 1981 and 1983 and under the First, Fourth, Fifth, and Fourteenth Amendments to the United States Constitution.

## VENUE

4.   Venue is proper in the Eastern District of New York as the events complained of herein occurred in Queens County which is within the jurisdiction of this Court.

## PARTIES

5..   Plaintiff Landell Ellis (also sometimes simply referred to as "Plaintiff Ellis") was at all times relevant and material to this case, a resident of the County of Queens within the jurisdiction of this Court.

6.   Plaintiff Alessandra Charles (also sometimes simply referred to as "Plaintiff Charles") was at all times relevant and material to this case, a resident of the County of Brooklyn within the jurisdiction of this Court.

7.   At all times relevant and material to this case, the City of New York was, and upon information and belief, still is, a municipal corporation incorporated under the laws of the State of New York and the employer of all the individual defendants herein and has as its address

for service of process is: C/o The Corporation Counsel of the City of New York, 100 Church Street, New York, N.Y. 10007.

8.     At all times relevant and material to this case defendants Sergeant Martinez, Detective Bonah, Police Officer Rodriguez, Detective Lagano, Detective Tran, Lieutenant Kapur, Detective Carrera, Detective Ciprian, Under Cover Officer #136, Under Cover Officer # 163 and Ghosting Undercover "John Doe", were Police Officers employed by the New York City Police Department, a branch of the City of New York and sued herein in their personal capacities and as agents of the City of New York under the common law.

9.     During all times relevant and material to this case, the actions of defendants Sergeant Martinez, Detective Bonah, Police Officer Rodriguez, Detective Lagano, Detective Tran, Lieutenant Kapur, Detective Carrera, Detective Ciprian, Under Cover Officer #136, Under Cover Officer # 163 and Ghosting Undercover "John Doe" complained of herein were done as part of the custom, practice, usage, regulation, and/or direction of Defendant City of New York, and Defendant City is as such responsible for the actions of these individual Defendants.

10.     During all times relevant and material to this case defendants Sergeant Martinez, Detective Bonah, Police Officer Rodriguez, Detective Lagano, Detective Tran, Lieutenant Kapur, Detective Carrera, Detective Ciprian, Under Cover Officer #136, Under Cover Officer # 163 and Ghosting Undercover "John Doe", were acting as employees/agents of City of New York, and therefore Defendant City of New York is responsible for the actions of Defendants Police Officers and each of them under the principal-agent/respondeat superior theory.

## FACTUAL ALLEGATIONS

11.     On May 2, 2010, around 2 a.m. in the morning, Plaintiff Landell Ellis and

3

Plaintiff Alessandra Louis Charles were lawfully walking to a grocery store in their neighborhood around Lakewood and Sutphin Boulevard in Queens, New York. There was a crowd of people in front of the store. Mr. Ellis told Ms. Charles to stay outside of the grocery store by the bus stop for her safety as he went inside to pick up some groceries.

12.    As Ms. Charles waited by the bus stop, a Caucasian female approached the bus stop and was about to ask Ms Charles a question when an unmarked Police car which was tailing the Caucasian woman then approached Plaintiff Charles. The officer asked her if she knew the Caucasian female and she told them that she did not. They then asked her if she knew anything about recent shootings. She was then ushered into the unmarked car, and driven to a van, handcuffed and searched.

13.    Meanwhile when Mr. Ellis left the grocery store after buying some grocery, he noticed that Ms. Charles was gone.

14.    Mr. Ellis assuming that Ms. Charles went back to their house, decided to head back on his way home. As he was walking home, he was accosted by police officers. They stopped him, searched him, took his identification and told him to go in the van. They confiscated the identification cards (his and Ms. Charles' he had on him) and the cigarettes, chips, and beer that he had just bought from the grocery store. They broke his beer bottle and handcuffed him.

15.    The Officers then brought him into another van in which Alessandra and the Caucasian female were in. Mr. Ellis was then questioned about recent shootings. The Officers then drove all three of them to the 113th Precinct and told Mr. Ellis that he was charged with promoting prostitution of his girlfriend and of the White female.

4

16.    Plaintiff Ellis and Plaintiff Charles were booked.  Ms. Charles was told by an attorney that she was charged with prostitution. She received a piece of paper telling her to come back to court for disorderly conduct and the charges were later dismissed.

17.    The Officers checked Plaintiffs' phones at the scene of the incident and there were no calls made from either of their phones to any of the phones found on  the arrested Caucasian female, later identified as B.L.(for privacy reasons, Plaintiffs are using her initials in this lawsuit), or from any of B.L.'s phones to any of the phones belonging to Plaintiffs. There was nothing found on B.L. that belonged to Plaintiffs or found on Plaintiffs that belonged to B.L. There was no connection whatsoever that the officers found or observed, between B.L. and any of the Plaintiffs.

18.    Upon information and belief, B.L. was a drug addict and may have also worked as a prostitute to support her drug habit. She was found with numerous and different types of prescription pills, three phones and she looked disheveled when she was arrested.  None of the calls from the three phones recovered from her which the officers checked were made to either of the Plaintiffs.

19.    None of the Plaintiffs ever met or knew who B.L. was and other than her coming to the same bus stop where Plaintiff Ellis told his girlfriend, Ms. Charles, then a college student, to wait for safety reasons when he went to the store, Plaintiffs had never had any type of interactions with her.

20.    The allegation that Plaintiff Ellis was offering either (or both) B.L., a total stranger to him whom he never met before his arrest, or his girlfriend, for prostitution, was totally fabricated and was not supported by any evidence and done maliciously.

5

21.      Upon information and belief, the Officers had worked a double shift without

having made an arrest and had just started a third straight shift, were anxious to log in some

arrests and therefore trailed a known drug addict, who may have also worked as a prostitute, and

when they saw her attempt to engage Ms. Charles in a conversation, found an excuse to arrest

Ms. Charles, and later Plaintiff Ellis,  in order to record a successful operation.

22.      On May 3, 2010, Mr. Ellis' bail was set at $5,000 and he spent almost three

months in jail (from May 2nd to May 25th ) before making bail on July 25, 2010. Mr. Ellis made 8

court appearances. He subsequently went to trial, and he was unanimously acquitted after one

week of trial, on August 26, 2011, after less than 30 minutes of jury deliberations.

23.      As a direct consequence and result of the acts of defendants hereinabove

complained of, plaintiffs were deprived of liberty for a substantial period of time, suffered severe

physical, mental and emotional distress, Plaintiff Charles was unable to attend the duties of her

employment, and she sustained damages for loss of earnings during that period.

24.      The acts, conduct, and behavior of Defendants, and each of them, were performed

knowingly, intentionally and maliciously, by reason of which Plaintiffs are entitled to an award

of punitive damages.


## AS FOR A FIRST CAUSE OF ACTION

25.      Plaintiffs repeat and re-allege paragraphs 1 through 24 as if each paragraph is

repeated verbatim herein.

26.      Plaintiffs were arrested and imprisoned without probable cause to believe that

they had committed any offense in violation of their rights not to be arrested and imprisoned

6

without probable cause as guaranteed to them by the 4th and 14th Amendments and by 42 U.S.C. § 1983.

## AS FOR A SECOND CAUSE OF ACTION

27.     Plaintiffs repeat and reallege paragraphs 1 through 26 as if each paragraph is repeated verbatim herein.

28.     Plaintiffs were arrested and imprisoned without reasonable cause to believe that they had committed any offense in violation of their rights not to be subjected to unreasonable searches and seizures guaranteed to them by Article 1 section 12 of the New York State Constitution and the individual Defendants and the City of New York are jointly and severally liable to Plaintiffs for their false arrest under the New York State Constitution..

## AS FOR A THIRD CAUSE OF ACTION

29.     Plaintiffs repeat and reallege paragraphs 1 through 28 as if each paragraph is repeated verbatim herein.

30.     Plaintiff Landell Ellis was maliciously charged and prosecuted for Promoting Prostitution, and Plaintiff Alessandra Charles was maliciously charged with Prostitution in violation of their right to be free from malicious prosecution protected by the 4th and 14th Amendments and by 42 U.S.C. § 1983.

7

## AS FOR THE FOURTH CAUSE OF ACTION

31.     Plaintiffs repeat and reallege paragraphs 1 through 30 as if each paragraph is repeated verbatim herein.

32.     Plaintiff Landell Ellis was maliciously charged with and prosecuted for Promoting Prostitution and Plaintiff Alessandra Charles was maliciously charged with Prostitution in violation of their rights not to be subjected to malicious prosecution guaranteed to them by Article 1 section 12 of the New York State Constitution and the individual Defendants and the City of New York are jointly and severally liable to Plaintiffs for their malicious prosecution under Article 1 § 12 of the New York State Constitution..

## AS FOR A FIFTH CAUSE OF ACTION

33.     Plaintiffs repeat and reallege paragraphs 1 through 32 as if each paragraph is repeated verbatim herein.

34.     The violations of Plaintiff's constitutional rights and of Federal Law as hereinabove enumerated by Defendants Police Officers and each of them, were carried out under the following policies, customs, and practices of Defendant City of New York:

i.      Failure to establish, publish, and instill in New York City Police Officers the practical meaning of probable cause or reasonable cause for arresting a citizen or charging a citizen with a crime so that officers would not detain, arrest, and/or charge citizens based on their hunches, inklings, or mere suspicion and without reasonable or probable cause;

ii.     De-emphasizing the importance of an arrest warrant issued by a Judge or Magistrate, which would act as a buffer between the citizenry and the Police, and encouraging

8

the Police under the aggressive policing policy of the Guiliani and Bloomberg administrations to arrest first and ask questions later;

       iii.     Failing to establish, publish, and instill in New York City Police Officers guidelines for when using force against a civilian is necessary and how much force is necessary;

       iv.     Failing to take proper corrective and punitive actions against overreaching police officers and creating the impression that crime reduction is paramount and triumphs over constitutional rights in all circumstances.

       v.     Wrongfully arresting minority individuals on the pretext that they were involved in drug transactions;

       vi.     Arresting innocent person in order to meet "productivity goals" (i.e. arrest quotas).

       35.     The existence of the aforesaid unconstitutional customs and policies may be inferred from repeated occurrences of similar wrongful conduct.

       36.     The existence of the aforesaid unconstitutional customs and policies may further be inferred from the admission by Deputy Commissioner Paul J. Browne, as reported by the media on January 20, 2006, that commanders are permitted to set "productivity goals."

       37.     The foregoing customs, policies, usages, practices, procedures and rules of the City of New York and the New York City Police Department constituted a deliberate indifference to the safety, well-being and constitutional rights of Plaintiff Landell Ellis and Plaintiff Alessandra Charles.

       38.     The foregoing customs, policies, usages, practices, procedures and rules of the City of New York and the New York City Police Department were the direct and proximate cause of the constitutional violations suffered by Plaintiff Ellis and Plaintiff Charles as alleged

herein.

39.     The foregoing customs, policies, usages, practices, procedures and rules of the

City of New York and the New York City Police Department were the moving force behind the

constitutional violations suffered by Plaintiff Ellis and Plaintiff Charles as alleged herein.

40.     As a result of the foregoing customs, polices, usages, practices, procedures and

rules of the City of New York and the New York City Police Department, Plaintiff Landell Ellis

and Plaintiff Alessandra Charles were falsely arrested and falsely imprisoned, and Plaintiff Ellis

was maliciously prosecuted.

41.     Defendants, collectively and individually, while acting under color of state law,

were directly and actively involved in violating the constitutional rights of Plaintiff Ellis and

Plaintiff Charles.

42.     Defendants, collectively and individually, while acting under color of state law,

acquiesced in a pattern of unconstitutional conduct by subordinate police officers, and were

directly responsible for the violation of Plaintiffs' constitutional rights.

43.     Under 42 U.S.C. § 1983, Defendant the City of New York is jointly and severally

liable with Defendants Police Officers and each of them for the general and specific damages

Plaintiff sustained, as well as for the attorneys' fees and the costs and disbursements of the

action.

        **WHEREFORE**, Plaintiff prays the Court for judgment as follows:

**For each of the constitutional and statutory violations hereinabove complained of:**

        i.      general and compensatory damages in an amount that would adequately

compensate Plaintiff and each of them for the violation of their rights and for their physical,

emotional and mental distress – against all Defendants, jointly and severally;

    ii.    specific damages in the amount it cost Plaintiffs to defend themselves in Court as a result of Defendants' actions – against all Defendants jointly and severally;

    iii.    specific damages for the income that they lost as a result of Defendants' actions – against all Defendants, jointly and severally;

    iv.    punitive damages in an amount sufficient to punish Defendants and deter others like them from repeating such unlawful conduct – against the individual Defendants, jointly and severally;

    v.    attorneys' fees and the costs and disbursements of this action – against all Defendants, jointly and severally; and

    vi.    such other relief as the court deems just and proper.

**For each of the common law and statutory violations hereinabove complained of:**

    i.    general and compensatory damages in an amount that would adequately compensate Plaintiff and each of them for the violation of their rights and for their physical, emotional and mental distress – against all Defendants, jointly and severally;

    ii.    specific damages in the amount it cost Plaintiffs to defend themselves in Court as a result of Defendants' actions – against all Defendants jointly and severally;

    iii.    specific damages for the income that they lost as a result of Defendants' actions – against all Defendants, jointly and severally;

    iv.    punitive damages in an amount sufficient to punish Defendants and deter others like them from repeating such unlawful conduct – against the individual Defendants, jointly and severally;

11

v.      attorneys' fees and the costs and disbursements of this action – against all

Defendants, jointly and severally; and

vi.     such other relief as the court deems just and proper.

Dated: Brooklyn, New York
       November 12, 2012

OFODILE & ASSOCIATES, P.C.
Attorneys for Plaintiffs

By:
Anthony C. Ofodile, Esq.
498 Atlantic Avenue
Brooklyn, New York 11217
Tel. No.: (718) 852-8300
Fax No.: (718) 852-7361
Email: acofodile@aol.com

12